THE A. MACALUSO FRUIT CO. et, Plaintiff-Appellee v. COM-
MERCIAL MOTOR FREIGHT, INC., Defendant-Appellant.

Ohio Appeals, Second District, Franklin County.

No. 3669.   Decided February 26, 1944.

98

Henry A. Reinhard, Columbus, Tussing & Lane, Columbus, for plaintiff-appellee.

Allen I. Pretzman, Columbus, for defendant-appellant.

## OPINION

By BARNES, P. J.

The above-entitled cause is now being determined as an error proceeding by reason of defendant's appeal on questions of law from the judgment of the Court of Common Pleas of Franklin County, Ohio.

Plaintiff's original petition was filed August 19, 1941, and therein it asks judgment against the defendant in the sum of $365.00, and costs, on account of a collision between the two motor vehicles of plaintiff and defendant occurring on July 10, 1941, about the hour of 4:40 A. M., on State Route 3, at a point about two miles east of Wilmington, Ohio.

In the third amended petition upon which the case was tried, the amount of damages prayed for was $1119.00. At the time of the accident plaintiff's motor truck was being operated by an employee in furtherance of plaintiff's business.

Defendant's motor vehicle, consisting of a double trailer outfit, was being operated by an employee of defendant in the regular course of its business. Plaintiff's motor vehicle was a one and one-half ton truck, and was loaded with a cargo of potatoes and was proceeding eastwardly towards Columbus. Defendant's double trailer outfit, filled with miscellaneous cargo was being operated in a westerly direction enroute to Cincinnati. Both concerns were Ohio corporations with their place of business in Columbus, Ohio.

Defendant filed an answer and cross petition.

The specific claimed acts of negligence on the part of the defendant as set out in plaintiff's third amended petition are the following:

(1) In operating and driving said tractor, semi-trailer and trailer on the wrong side of said highway.

(2) In not keeping a lookout ahead.

(3) In operating said outfit at an excessive rate of speed, to-wit, approximately 25 miles per hour.

(4) In failing to have said outfit under control.

Defendant's answer, after admitting certain formal allegations, denied all claimed acts of negligence. In his cross-petition it alleged that the plaintiff was guilty of negligence in the following particulars:

(1) That the plaintiff did not have control over said truck.

(2) That the plaintiff either saw or by the use of ordinary care could have seen the defendant's tractor and trailer in time to have avoided the accident.

(3) That the plaintiff operated its truck upon the wrong side of the road, to-wit, on the left side of the street or highway.

(4) Plaintiff operated its truck for a period of fourteen consecutive hours without the driver of said truck having eight consecutive hours off duty, and also that said truck was operated fourteen hours in the aggregate of the twenty-four hours preceding said collision, without the driver having had eight consecutive hours off duty, all of the above contrary to the statutes in such cases made and provided.

The issues on the cross-petition were joined through plaintiff's reply.

The case came on for trial before a jury and resulted in a verdict for the plaintiff, for the full amount claimed. At the close of plaintiff's testimony counsel for defendant interposed motion for a directed verdict, which was overruled. The same motion was again presented at the close of all the testimony and again overruled. Counsel for defendant preserved his record by filing motion for judgment notwithstanding the verdict, and this motion was also overruled.

The motion for new trial sets out thirteen separately numbered and stated specifications of claimed error. Following the overruling of the motion for new trial defendant filed a notice of appeal on question of law, thus lodging the case in our Court.

Assignments of error are set out in 10 separately numbered and stated specifications. We will discuss these assignments in order.

"1. That the Court erred in giving to the jury two special interrogatories at the request of the plaintiff."

The two interrogatories submitted read as follows:

"Q. Was the outfit consisting of a tractor and two trailers of the defendant Commercial Motor Freight, Incorporated, being operated at a greater rate of speed than was reasonable and proper at the time of the collision between the truck of the A. Macaluso Freight Company and the tractor and two trailers of the Commercial Motor Freight, Incorporated?"

This interrogatory was answered "Yes", and signed by nine members of the jury.

"Q. Did the speed of the outfit of the Commercial Motor Freight, Incorporated, consisting of a tractor and two trailers directly contribute in the slightest degree in causing the collision between the truck of the A. Macaluso Fruit Company and the tractor and trailer of the Commercial Motor Freight?"

Nine members of the jury answered this interrogatory, "Yes". We hold that these interrogatories were improperly given for the following reasons:

There was absolutely no evidence that the speed of the defendant's trailer-truck was in any way a proximate cause of the accident. There was evidence that this trailer-truck immediately before the accident was operating at a speed greater than the twelve miles per hour prescribed under the Code. However, the speed at which it was operating at the time and place and under the conditions then existing could have nothing to do with the accident providing it was being operated on its own right-hand side of the road. The highway at this point was paved to a width of 20 feet, the center line definitely marked. The highway ran straight east and west, practically level, no intersections, in the country, no evidence of the outfit being out of control and for this and other reasons the Court should have withdrawn from the jury the allegation of speed as being a proximate cause of the accident.

The record presents the unmistakable conclusion that one or both trucks were over the center of the highway. The definite question for determination was, which one; in other words, who hit whom?

Counsel for appellant calls attention to §11420-17 GC, which in substance provides that the trial court when requested shall instruct the jury, if they render a general verdict,

specifically to find upon particular questions of fact as requested. (Emphasis ours.) In addition to the section, counsel cite numerous decisions wherein it is provided that it is not error for the trial court to refuse to submit to the jury special interrogatories wherein there is omitted the provision, "if they render a general verdict." If the question of speed and proximate cause were in issue, either under the pleadings or the evidence, we would not hold that it was prejudicial error to submit the special interrogatories, even though the trial court did not instruct that their answering such was only required in the event that they returned a general verdict. However, under the factual situation we do determine that the submitting to the jury of such interrogatory was prejudicial error in view of the fact that their answer might indicate that their general verdict was by reason of their determination as to excessive speed and a proximate cause of the accident. This they would not have the right to do.

Under assignment No. 2 it is claimed that the Court erred in admitting evidence offered by the plaintiff and objected to by the defendant. Specifically, this refers to the testimony of Byron E. Holzfaster of Dayton, Ohio. Mr. Holzfaster is an attorney associated with Mr. Curtner, with offices in the city of Dayton. Mr. Curtner was contacted by telephone, and requested to investigate the accident on behalf of plaintiff. He sent Mr. Holzfaster and the latter arrived at the scene of the accident about 10:30 A. M., or nearly six hours following the hour of the accident. He remained at the scene from the time of his arrival until dark. The collision was very serious in its result, both drivers being instantly killed. The damage to both motor outfits was very great. The double trailer motor truck came to rest about 100 to 125 feet west of that of the plaintiff's motor truck. The highway at this point coursed east and west. Plaintiff's outfit rested almost diagonally with the highway, facing north. Witnesses vary as to its location on the highway, some placing its front four or five feet across the center line and on the north lane; others located it on the south lane within from a half foot to a foot and a half of the center line. The double trailer-truck a southeasterly course. finally stopping with its front very close to the road fence on the south side. At the time witness Holzfaster arrived at the scene of the accident, neither motor vehicle had been moved from their location. Immediately following the accident the highway was covered with debris, mostly being potatoes from plaintiff's truck. Before noon wrecking crews removed both

outfits from their location on the highway, and also swept and removed all debris, opening up the highway for normal use. Shortly after the noon hour, witness Holzfaster took photographs, four of which were introduced in evidence. Plaintiff's Exhibits A and B were photographs of plaintiff's truck in its damaged condition, but taken after the same had been moved off the highway and onto a side road. Plaintiff's Exhibit A is a side view of the truck with the entire body missing. There was other evidence that one of the results of the collision was to remove from plaintiff's truck the entire body. Plaintiff's Exhibit B is a picture of the front end of plaintiff's truck and shows the major damage to the left front, particularly the left light, fender and bumper. The photograph shows very little damage, if any, to the grill covering the radiator.

Plaintiff's Exhibit C and D are photographs of the highway. According to witness Holzfaster his camera was on the center line, and facing west. On page 11 of the bill of exceptions, while Mr. Holzfaster was being examined in chief, the following question was asked by counsel for plaintiff:

"Q. Now, did you observe any marks on the highway which were comparatively fresh which would give you any clue as to where, with reference to those two vehicles, that you saw, that there might have been a collision between them?"

The witness answered, "I did". And then the following question:

"Q. And will you indicate where you observed that to be?"

Objection was interposed by counsel for defendant. The objection was overruled, but the Court at the same time instructed the jury to consider this evidence with caution: "give it the weight you think it may be entitled, if it is entitled to any weight." It is our judgment that this inquiry was improper in form. This observation applies to all of the questions above quoted. A well recognized rule is that a witness is permitted to give evidence in the minutest detail covering physical conditions, but should not be permitted to testify as to where in his judgment the accident happened, where the sole basis of the deduction is the marks on the highway or other physical condition. However, the witness' answer immediately following conformed to the proper rule in that he described the

marks on the highway and their location. In substance, he said there was a splatter of marks approximately right on the center line of the highway and also about six inches south of the center line of the highway, and that there were marks made by dual wheels from this point.

The next question asked was,

"Where did you observe those marks to extend from that point? A. Now they extended in a curved fashion in this manner down across the south half of the highway, off on to the south berm and directly to where the Commercial outfit was sitting when I saw it."

Further inquiry was made of this witness on the same line. During the course of the examination the photographs, marked C and D, were identified, and the witness testified relative thereto. In cross-examination counsel for defendant, through his interrogation brought out some opinions of the witness as to the exact location of the impact. Of course, no complaint may be predicated upon answers made to questions propounded by defendant's counsel, if responsive.

We have no difficulty in determining that strictly speaking this witness did not have the right to give an opinion as to what point in the highway contact between the two outfits happened but we are unable to conclude that defendant properly preserved his record, in that objection was not timely.

Complaint is also made as to the testimony of Mr. and Mrs. Omer Mussetter, both called in rebuttal. In support of the objection it is argued that the testimony of neither was properly rebuttal. While both of these witnesses did give some testimony that might properly have been presented in chief and not in rebuttal, yet we discern that both witnesses were called primarily to show that no traffic passed the scene of the accident following the collision, and thus intending to refute the testimony of two witnesses for defendant who claimed to be eyewitnesses to the accident. We find no prejudicial error under this assignment.

Assignments Nos. 3, 4, 9 and 10 deal with the question as to whether or not there was any evidence to support the judgment, and if so, the weight of the evidence, etc. We will discuss these assignments later and together.

Under assignment of error No. 5 the claim is made that the trial court erred in his general charge to the jury. In support

of this assignment it is argued that the trial court committed prejudicial error in not instructing the jury to disregard certain improperly admitted testimony. We have already discussed this question under assignment No. 2. It is not sufficient to merely find that certain evidence should have been rejected had timely objection been made thereto and the record at all times protected on this improper testimony. If counsel in cross-examination brings into the record the identical objectionable testimony, he cannot afterwards be heard to complain.

We find no prejudicial error under this branch of specification No. 5.

Complaint is also made that the Court in its general charge committed prejudicial error in distinguishing between direct and circumstantial evidence and particularly in his definitions of circumstantial evidence. The following is what the Court said:

"Circumstantial evidence is the proof of a series of facts other than the facts in issue which by surrounding circumstances have been so associated with the facts that in relation of cause and effect lead to satisfactory and certain definite conclusions. In other words, where certain facts are proven established by direct evidence, then circumstantial evidence is that type which is inferred from the circumstances of those facts which are proven."

We find nothing prejudicial under the above language, even though it might be conceded that other definitions formulated by certain text writers might be more elucidating.

Under assignment of error No. 6 complaint is made that the trial court committed prejudicial error in refusing to give special requests Nos. 3 and 6 before argument.

No. 3 reads as follows:

"I charge you as a matter of law that there was no legal requirement upon the part of Bates or Herbert, witnesses for defendant, to stop at the scene of the accident between the truck of the plaintiff and that of the defendant; nor was there any legal requirement that they disclose to either the State Highway Patrol or to the attorney for the Macaluso Fruit Company that they had seen the accident in question."

Witnesses Bates and Herbert were called on behalf of defendant. Both lived in Columbus, Mr. Bates being engaged in

manufacturing electric storage batteries and Mr. Herbert, an expert accountant. According to the testimony of these two witnesses, Mr. Bates had made an appointment to meet a customer in Cincinnati between six and seven o'clock. This customer was expecting to leave Cincinnati on a seven o'clock train, and hence the appointment at the hour designated. Mr. Herbert had been assisting Mr. Bates with his books. A question had arisen through the Cincinnati customer as to the correctness of a charge. The specific purpose of the trip was to reconcile, if possible, this difference. They left Columbus about 3:00 or 3:15 A. M., taking the 3 C's highway through Washington C. H., Wilmington, et al. The trip was made in Mr. Bates' automobile and he was doing the driving. They were traveling between fifty and sixty miles an hour. Very shortly before the accident the double trailer-truck was sighted ahead of the Bates car and proceeding in the same direction. Bates testified that he saw what proved to be the plaintiff's truck coming towards them on its own righthand side of the road. Its headlights were burning. Very shortly after he saw it he testifies that it veered over towards and then across the center of the line so that immediately before the crash plaintiff's car was approximately one-half to the north and one-half to the south. He further testified that the double trailer truck was at all times well on its own right side of the road. Shortly before the crash it moved over a little farther to its right. Mr. Herbert's testimony was the same in substance except that he was paying no particular attention to what was ahead until Mr. Bates apparently took his foot off of the accelerator and thus slowed the car down, which caused him to look out and then he saw the double trailer outfit moving westerly on its own right side of the road. He did not see the plaintiff's truck at all until after the collision. Bates' car slowed down to about ten miles an hour and proceeded without stopping. They described the location of the respective trucks practically the same as other witnesses; also mentioned the debris in the highway which forced them to pull over off of the paved portion. In cross-examination counsel for plaintiff asked both Bates and Herbert whether or not they had made any statement to the State Highway Patrol or to the attorney for the plaintiff company concerning the accident. Both testified that they did not. Counsel for defendant objected to this inquiry, which objection was overruled. In the argument following the objection counsel for defendant argued

that there was no legal obligation for these witnesses to make statements to any one. The trial court in the hearing of the jury agreed to this, but nevertheless determined and properly so, that counsel had a right to make the inquiry; also in cross-examination counsel at some length questioned Bates and Herbert about not stopping. They both gave as their reason the urgent need to get to Cincinnati in time to meet their appointment. Inquiry was also made as to whether or not they knew that the drivers of these trucks, either or both, had been killed. They both answered that they did not. They did, however, answer the inquiry that they realized that it was a very serious accident. This was the situation prompting defendant to submit the special request for instruction before argument. In our judgment this was a matter very much in the discretion of the trial court. It might have been given without being erroneous, but we are unable to conclude that the matter was of sufficient importance to make the Court's refusal prejudicially erroneous.

Request No. 6 reads as follows:

"I charge you as a matter of law that the responsibility for the accident in question cannot be determined solely and alone from photographs of the damaged vehicles, but you may take into consideration all of the circumstances relating to the responsibility for the accident."

This statement is so obvious that we cannot conclude that it should be made the subject of a special instruction. We find no error under this specification.

Assignments of error Nos. 7 and 8 are all-inclusive and in substance answered through the discussion of other errors.

This brings us to Nos. 3, 4, 9 and 10, which we have previously indicated we would discuss together.

Assignment No. 3 complains that the trial court was in error in failing to direct a verdict for the defendant at the conclusion of plaintiff's testimony; and assignment No. 4, that there was like error in refusing to direct a verdict at the close of all the testimony.

Assignment No. 9 complains that the verdict is not sustained by sufficient evidence, and No. 10, that the verdict is contrary to law and manifest weight of the evidence.

Assignments 3 and 4 invoked the question of final judgment under the claim of no evidence through which the case

108

could properly go to the jury, whereas assignment Nos. 9 and 10 question the sufficiency of the evidence and demands a new trial. The determination of both the question of final judgment and new trial requires a very careful reading of the record. This we have done. The only evidence in the entire record that needs a careful analysis on the matter of negligence and proximate cause against the defendant is that of Byron E. Holzfaster, attorney, of Dayton, Ohio. The eyewitnesses to the accident refuted the claim of defendant's negligence. Mr. Holzfaster is a very capable and honorable member of the Bar in the City of Dayton. Of course, it can not be said that he was wholly disinterested. On the contrary, he was employed by the plaintiff to make the investigation. He arrived at the scene of the accident between five and six hours after it happened. We would not for a moment question the integrity of this witness, but neither can we lose sight of the fact that it would be expected that he was looking at the physical conditions in the most favorable light of his client. Under this situation it necessarily follows that his testimony and the photographs he took present as strong a set-up as his investigation would warrant. We do, however, eliminate as substantive evidence, any statement of this witness fixing the point of contact between the two outfits. This was a question solely for the determination of the jury. We have read and reread many times the testimony of this witness and in connection with his testimony have had constantly before us the two photographs which he took shortly after noon on the day of the accident. The marks on the highway are fully described by the witness and are further illustrated through the photographs. Considering this testimony in its most favorable light we arrive at the conclusion that it was impossible to determine the exact point where the cars came together. From this evidence alone no conclusion could be arrived at that would rise above the category of a guess. We fully agree with the contention of counsel for plaintiff-appellee that after the trial court overruled defendant's motion for a directed verdict at the close of plaintiff's case and proceeded to present testimony in defense, that this at once waived the claimed error under assignment No. 3, but, however, when the motion was renewed at the close of all the evidence the record is adequately presented as to whether or not considering the evidence in its entirety, reasonable minds might differ on the question as to plaintiff's right of recovery.

Tested under this rule, we arrive at the conclusion that the trial court should have directed a verdict, that the verdict of the jury was erroneous and that final judgment must be entered in favor of defendant and plaintiff's petition dismissed.

This conclusion renders all other claimed errors unimportant, but we are required under a mandate in the Code to pass on all claimed errors. This procedure has its advantage in that if the Supreme Court should determine that we are in error in entering final judgment, that our determination of the other errors at once becomes effective without remanding the case to our Court with direction to pass on errors not considered or determined. For this reason and this reason alone, we look to assignments 9 and 10 on the question of the weight of the evidence. We are unanimous in the conclusion that the weight of the evidence is so overwhelmingly in favor of the defendant that it demands a reversal on the weight of the evidence, if perchance there is any doubt on our entering final judgment. The two eyewitnesses following the defendant's trailer-truck and in a position to see, present testimony absolutely absolving the defendant from the claimed negligence of being on the wrong side of the highway, and further give testimony that the plaintiff drove across the center line of the highway and into the defendant's trailer-truck. If true, this would establish that the plaintiff's negligence was the sole cause of the accident and resultant injuries. As heretofore stated, the drivers of both outfits were killed. No one was riding with either of the drivers. We are impressed with the testimony of Mr. Bates and Mr. Herbert. These are the two individuals who were eyewitnesses. Mr. Bates is a business man in Columbus, Ohio, and Mr. Herbert, an accountant. Both seem to be very intelligent and so far as we are able to detect, no sympathy or prejudice was exerted for or against either party. Counsel for plaintiff think their conduct following the accident was so unnatural as to make doubtful whether or not they saw the accident at all. Both witnesses admit that they knew that there was a very serious accident, but did not know that either driver might have been killed. Their business appointment in Cincinnati, between six and seven, and their limited time to make this appointment, was the controlling factor that prompted them to go on and not stop. They testified that they saw coming from a nearby residence a man who would be able to render immediate assistance, and also two motor vehicles approaching from the west going

east. The evidence of the three witnesses living in the immediate vicinity of the accident, in effect questions the approach of these two motor vehicles from the west. This is an added reason urged by counsel for plaintiff why the testimony of Mr. Bates and Mr. Herbert was not entitled to credit. We recognize this conflict in the testimony and are unable to demonstrate conclusively a reconciliation. However, it must be admitted that this very bad accident would create a very nervous and exciting situation. It is a matter of common knowledge under situations like this, no two witnesses see the same situations in the same way. One may concentrate on one thing and others on something else. Mr. Day who lived to the north of the highway and came out of his home very quickly after the accident, thought the double trailer outfit of defendant was on fire. This wrecked outfit was very close to his barn, and it is reasonable to suspect that to him that was a major question. He did not see the Bates automobile pass on the highway, although Mr. Herbert testifies that he saw Day coming out of the house.

Mr. and Mrs. Mussetter lived in a little house directly south of the scene of the accident. Both were awakened by the crash. They very quickly got up, looked out of the window, partially dressed and then went out. Neither saw any traffic from either direction until a few minutes later when a truck approached from the east going west. It is urged that their testimony contradicts both Bates and Herbert as to their being on the highway and passing the scene of the accident and it also denies the approach of two or any automobiles from the west going east. So far as the Bates car is concerned it could very well be through and out of sight before these two witnesses came out from their home. There would remain an apparent conflict relative to the two cars supposedly approaching the scene of the accident from the west going east. Again, we might say that while this apparent discrepancy may not be reconciled with all the testimony, nevertheless we do not think that these enumerated facts would warrant the ignoring of the testimony of Bates and Herbert in its entirety.

In addition, Mr. Day's testimony is favorable to the defendant. He says that he was up and dressing at the time of the crash and instantly looked out of the window and at that time the defendant trailer-truck was well on its right-hand side of the highway. It then proceeded eastwardly, finally crossing the center line and turning onto the south berm and up to within about a foot of the road fence. This witness

also testifies that the broken spring on the defendant's truck made a scratch in the cement on the paved portion of the highway which was traceable down to where the defendant's truck stopped. In the soft ground off the cemented portion of the highway this broken spring cut in rather deeply. He says that this scratch in the highway was substantial and was discernible for almost a year afterwards; that it was located on the north side of the highway which would be defendant's right side.

If there be any question as to the correctness of our conclusion in entering final judgment, then it is our determination that the verdict of the jury is against the manifest weight of the evidence and that by reason thereof a new trial should be granted.

Entry may be drawn in conformity to this opinion.

Costs in this Court will be adjudged against the appellee.

GEIGER, J., concurs.

HORNBECK, J., dissenting:

The majority opinion considers in detail thirteen errors assigned by defendant-appellant which are presented and argued at length under ten specifications. The conclusion reached is based upon one simple fact that there is no proof in this record to support the first specification of negligence in plaintiff's petition, namely, that defendant's operator at the time of the collision was operating and driving its outfit on the wrong side of the highway. If this determination is correct and required by the record then, of course, final judgment is the proper order in this Court. On the other hand, if there is some evidence upon which reasonable minds may differ as to the first specification of negligence then either we must reverse upon the weight of the evidence, or support the verdict.

The majority opinion concedes that there is support for the third specification of negligence, namely, that defendant was operating its outfit in violation of the controlling statute as to speed but holds that this violation could not have been a proximate cause of the collision because it did not combine with negligence of defendant in operating on the wrong side of the road. This conclusion likewise is sound, if the record in no reasonable view supports the first specification of negligence.

Judge Barnes, at length, discusses the photos of the highway, Plaintiff's Exhibits "C" and "D", and concludes that

they do not visually support the claim that the two outfits came into collision on defendant's wrong side of its road. I am not disposed to differ as to the effect of the photos but the witness, Holzfaster, did not confine his testimony to the photos but employed other means, probably a blackboard, and thereby elucidated his testimony tending to establish that the marks on the road observed by him would afford proof that the defendant's tractor was on its wrong side of the road and while there the outfits came together. This procedure is common in the trial of cases and it may very properly be the fact, that that which the witness placed upon the blackboard was effective to support the manifest purport of his testimony. I am of opinion that we may not properly say, in the absence of that which was before the jury, that it may not have presented proof, by way of proper inference drawn from that which is in the record, to support plaintiff's first claim of negligence. If so, we may not properly enter judgment for defendant.

This being true, it would not be necessary to discuss the evidence offered by the defendant by the two witnesses, Bates and Herbert. I might say of them what the majority opinion says of Holzfaster, namely, that I have no reason to question their integrity. However, the monumental fact in this case is, that for some reason or another, the jury must have disregarded what they said. This is true because, if they had been believed, then there is not a scintilla of doubt that the sole proximate cause of the collision was the manifest negligence of the driver of the plaintiff's truck. It is seldom that a case affords such direct and definite proof upon a material matter as is presented by these witnesses and, particularly Mr. Bates.

Without unduly prolonging this dissent suffice to say that, after a reading of every line in the bill of exceptions, there is, in my judgment, in the record enough to support the conclusion of the jury that these men may not have seen that to which they testified because of the improbability of some of their statements, and particularly that immediately after the accident they drove around the wreck and on to their destination. The record will bear the construction that, in probability, they could not safely have gotten around the wreck because of the litter,—contents of the truck, parts thereof, etc.—with which the highway was strewn, and, further, that they did not pass the wreck. There may, also, have been other reasons why the jury did not accept their testimony. In any event, the test in this Court is not wheth-

er we believe these witnesses but whether the jury had the right to disbelieve them.

It is but a truism to say that where there is conflict in testimony, the credibility of the witnesses is primarily for the jury and not for a judge. The jury in this case was confronted with a difficult problem. There is nothing whatever in this record to indicate and it is not claimed, that passion or prejudice affected the verdict in the slightest degree. The issue was made by the two corporations both well able, so far as the record discloses, to respond to any verdict against them. Both were claiming damages largely upon the same specifications of negligence. In this situation the jury took this very close question of fact and resolved it in favor of the plaintiff. I am not satisfied, although a close question, that the judgment should be reversed at all, and am convinced that no final judgment should be entered in this Court.